[ Filed March 24, 1890. ]

D. E. BUSH, RESPONDENT, *v.* CITY OF PORTLAND, APPELLANT.

MUNICIPAL CORPORATION—SURFACE WATER—WHEN NOT LIABLE FOR CHANGING ITS COURSE.—A municipal corporation is not liable to an owner of land situated within its corporate limits for not permitting surface water which had been accustomed to flow over the land to be turned down the gutters of one of its streets in order to prevent its flowing in its former course, although the improvement of the street obstructed its flow in the direction in which it naturally ran.

IMPROVEMENT OF STREET—WATER TURNED INTO A GUTTER.—Where the city of P. improved one of its streets running north and south, and thereby turned surface water which had been accustomed to run down a slope on the west side thereof

across the same and a certain other piece of land to where it emptied into a creek which ran across the land, and the improvement of the street turned the water down the gutter on the west side of the street where the city authorities first designed it to run permanently, but it being subsequently ascertained that the course of the water down the gutter was injuring the street and abutting lots below, the said authorities turned it across the street and by means of a box gutter conveyed it through said land to the said creek near where it formerly ran, and B. thereafter, having purchased the land, diverted its course down the gutter on the east side of the street where it ran until complaint was made by the abutting lot owners on that side of the street, when the city authorities turned it back again into the said box gutter, and the evidence failed to show that the street was not properly improved, or that conveying the water through the box gutter was more injurious to the land than it would have been if allowed to flow in its natural channel course; *held*, that B. was not entitled to recover damages against the city in consequence of the turning of the water from the gutter of the street into the box gutter.

IMPROVEMENT OF STREET—INJURY OCCASIONED BY.—A municipal corporation is not liable to an owner of real property for an indirect injury to the property, occasioned by the improvement of its streets, where the injury is a necessary consequence of the improvement, and the work is properly performed.

APPEAL from a judgment of the circuit court for the county of Multnomah.

The respondent commenced an action in said court against the appellant, a municipal corporation, for the recovery of damages. He alleges in his complaint that he was the legal owner and in possession of a certain tract of land situate in the corporate limits of the city of Portland; that on or about the sixteenth day of December, 1888, the said appellant, by its agents, officers and employés, wrong-fully and unlawfully cut the gutters on Fifteenth street and caused large quantities of surface water to flow over and across the said land, whereby the soil thereof was being washed off, to his damage, etc.

The appellant filed an answer to the complaint, denying that it, by its agents, officers or employés, or otherwise, did the act therein complained of. And for a further defense averred that in the year 1888 the respondent wrongfully and unlawfully constructed an open gutter or drain in Fifteenth street and caused the said surface water referred to in the complaint, which was then flow-ing, and had for many years prior thereto been flowing over and across said lands, to flow down the same, which being insufficient to convey the water, caused great dam-

age and injury to the property holders living along the line of said street; that thereupon the officers of the city cut said gutter or drain so constructed by respondent and caused said surface water to flow over and upon said land, the same being a street and highway, to wit, Mill street; that said cutting of said drain was done to prevent damages to owners of property on said Fifteenth street, and was the same cutting complained of in the complaint.

The respondent filed a reply denying the new matter set up in the answer. The case was tried by jury, who returned a verdict in favor of the respondent and against the appellant for the sum of $50, upon which the judgment appealed from was entered.

*W. H. Adams*, for Appellant.

*C. M. Idleman*, for Respondent.

THAYER, C. J., delivered the opinion of the court.

It appears from the bill of exceptions herein that about the year 1884 the city of Portland caused Fifteenth street to be improved in front and west of the land described in the complaint, and caused a stream of water, which ran a considerable quantity in winter time but was dry during the summer, to run down the open gutter on the west side of said street. Said gutter, however, overflowed as soon as the winter rains came and washed out a large amount of earth, thereby damaging the street and property below. That thereupon parties supposed to be in the employ of the city constructed a box gutter across said street and across the land in question to the bed of a larger creek which flowed through said lands from the south. Said land at that time was owned by one A. Mier who continued to own it until the year 1888. Mier made no objection to the water being turned upon the land, and it was running across the same in the box gutters at the time of its purchase by the respondent. As soon as the latter purchased the land he constructed, without any permit from the city authorities, an open gutter down the east side of said

Fifteenth street and turned the water into the same.
Soon thereafter complaint was made to the superintendent
of streets of the city by property owners on said street
about the water running down the street where respondent
had turned it, and he ordered it turned back; and parties
came and sawed his open gutter in two and turned the
water back on respondent's land, where it was when he
constructed the gutter. It also appears from the bill of
exceptions that the creek, which flowed across respondent's
land from the south, was a continuous stream, having
quite a wide channel and emptied into what is known as
"Tanner's creek"; that the said surface water, before the
said improvement of Fifteenth street was made by the
city, flowed across the land within a few feet of the place
where it was made to flow by the construction of the box
gutter, and that it spread out over more ground, as it for-
merly ran, than it did after it was confined. Nor was
there any evidence tending to show that the running of
the water affected the land more injuriously by being con-
fined in a box sewer than it did when allowed to run at
large, although said Mier testified that he considered the
box gutters a damage to the property; nor was there any
evidence of damage to the land by the flowing of the
water across it, except that a witness for the respondent
was allowed by the court to be asked what it would cost to
take care of the water turned upon the land, to which he
answered that it would take $60 or $70 to take care of it.
This testimony, however, was taken under an objection
interposed by appellant's counsel, and an exception was
taken to the ruling of the court thereon. There was also
evidence tending to show that the gutters along the sides
of said Fifteenth street were allowed to become clogged
with mud and gravel, and that if kept clean would convey
away all the water.

After the respondent rested his case, counsel for appel-
lant moved for a non-suit on the ground that the water in
question was surface water and the city was not liable for
its flowing on respondent's land in any event, and that the

appellant had not been shown to be connected with the turning of the water upon the land and no damages were proven to have been sustained by respondent.   The court overruled the motion and the appellant's counsel excepted to the ruling.

It is quite evident that the improvement of Fifteenth street by the city necessarily interferred with the natural flow of the surface water which ran from the west side of the street eastward over the land in question to the creek, which ran through the land from the south.   The street ran north and south, and when graded, the water was turned northward down the gutter on the west side of it. The city authorities intended in the outset to use that gutter as a means of conveying away the water which came down from the west, but it was soon ascertained that it would be impracticable to do so, as it affected the street, and lot owners, below, seriously.   They then resorted to the method of running the water across the street at the most convenient point; and from thence, by means of the box sewer, through the respondent's land to the said creek at or near the place where it had formerly flowed. The respondent, after purchasing the land from Mier, con-- ceived the idea of turning the water down the east side gutter of the street and thereby prevent its running across his land, which he proceeded to do.   The result was that it affected the lot owners below on that side of the street and caused complaint to be made to the city authorities, who thereupon turned it back again through the box gutter.   Upon what ground the respondent, in view of the facts, could predicate a right of action against the city, is very difficult to discover.   The city had an undoubted right to improve the street, and unless it was guilty of negligence in the execution of the work, the respondent had no legal cause for complaint.   Parties owning prop- erty within the corporate limits of a city are necessarily compelled to submit to many inconveniences which the grading and improvement of streets occasion.   Building

XIX. OR.—4.

up a city is liable to incommode the owners of land situated within it in certain respects, but they are amply compensated therefor by the enhanced value of the property and by numerous benefits they indirectly receive in return. The owners cannot be deprived of the property, nor of its permanent enjoyment without just compensation, but they may be compelled to use it in conformity with general regulations established to promote the welfare of the community.

The learned circuit judge who presided at the trial of the case instructed the jury that they were to decide from the evidence whether the water in question was surface water or a well-defined stream, and if they found that it was a well-defined stream with a marked channel,— then, if the appellant had diverted it from its natural channel and caused it to flow in a channel not substantially the same as that in which it naturally flowed, and the respondent had sustained damages thereby, the appellant was liable for such damages, and their verdict should be for the respondent in the amount to which he had been damaged thereby. This instruction was not authorized by the pleadings or evidence in the case. The water was described in both complaint and answer as surface water which flowed during the rainy season, and there was no evidence that the respondent was damaged in consequence of its course being diverted from that in which it had been accustomed to run. There was not, in fact, any evidence that there had been a material diversion of its course; con fining it in a box gutter rendered it less liable to do damages to the respondent's land than if it were allowed to spread over the land.

Municipal corporations have been held liable for damages resulting to private property where in the improving of their streets they have interfered with the flow of a natural stream of water; but the evidence in this case does not show that the water in question constituted a natural stream, nor was it so claimed by the respondent's counsel at the hearing.

The judgment appealed from must therefore be reversed, and the case remanded to the circuit court with directions to dismiss the complaint.